IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| DAVID GEVAS, #B-41175, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | CIVIL NO. 10-493-MJR |
| | ) | |
| DERWIN RYKER, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

# MEMORANDUM AND ORDER

**REAGAN, District Judge:**

Plaintiff, David Gevas, an inmate in Stateville Correctional Center, brings this action for deprivations of his constitutional rights pursuant to 42 U.S.C. § 1983, arising out of several incidents that occurred while Plaintiff was housed in Lawrence Correctional Center. Plaintiff is serving a life sentence for murder. This case is now before the Court for a preliminary review of the complaint pursuant to 28 U.S.C. § 1915A, which provides:

> (a) **Screening.**– The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.
> (b) **Grounds for Dismissal.**– On review, the court shall identify cognizable
> claims or dismiss the complaint, or any portion of the complaint, if the complaint–
> > (1) is frivolous, malicious, or fails to state a claim on which relief
> > may be granted; or
> > (2) seeks monetary relief from a defendant who is immune from
> > such relief.

28 U.S.C. § 1915A.

An action or claim is frivolous if "it lacks an arguable basis either in law or in fact."

*Neitzke v. Williams*, 490 U.S. 319, 325 (1989). An action fails to state a claim upon which relief

can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Conversely, a complaint is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). Although the Court is obligated to accept factual allegations as true, some factual allegations may be so sketchy or implausible that they fail to provide sufficient notice of a plaintiff's claim. *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009). Additionally, Courts "should not accept as adequate abstract recitations of the elements of a cause of action or conclusory legal statements." *Id.* At the same time, however, the factual allegations of a pro se complaint are to be liberally construed. *See Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

Upon careful review of the complaint, the Court finds it appropriate to exercise its authority under § 1915A; portions of this action are subject to summary dismissal.

**<u>The Complaint</u>**

The Plaintiff's complaint, filed on July 8, 2010, sets out four separate claims against a total of ten defendants. In his first claim, Plaintiff alleges that when he was transferred into Lawrence Correctional Center on July 9, 2008, he was held for seven days in a cell that lacked water for consumption and sanitation, and lacked a working toilet. He made requests to Defendants Harrington, Brown, Vaughn and Ryker, for water, plumbing repairs, and to be moved to a cell with functioning water, but was not moved until July 15, 2008. As a result, Plaintiff suffered dehydration, headaches, constipation, insomnia, and other discomfort including nausea from the foul odor of the un-flushed toilet. Plaintiff's grievance over these conditions was

denied on December 29, 2008, by the Administrative Review Board.

His second claim arose on December 9, 2008, when, after filing grievances requesting a move due to threats he had received from a gang-member cellmate, Defendant Walters placed him with a new cellmate (Williams) whose filthy personal hygiene was so offensive to the Plaintiff that he went on a hunger strike to demand another move. After declaring the hunger strike, Plaintiff was moved on December 10, 2008, to a cell where bright lights were kept on constantly. He claims this action was to torture him for being on a hunger strike. Two days later (December 12), Plaintiff was told he would be moved to a different cell, so he ended the hunger strike and was moved accordingly. However, on December 15, 2008, Defendant Cox moved Plaintiff back in with inmate Williams, so Plaintiff declared another hunger strike. This time, instead of placement in the hunger strike cell, Defendant Cox put Plaintiff in segregation for refusing housing, and filed a disciplinary report on Plaintiff, actions which Plaintiff claims were taken in retaliation for his filing of grievances. Defendant Goins then imposed 30 days' segregation on the disciplinary report, which Defendant Ryker approved. The Administrative Review Board denied Plaintiff's grievances over the cell assignments on June 2, 2009, and July 16, 2009, and denied the grievance over the 30 days' segregation on May 4, 2009.

Plaintiff's third claim faults Defendant Hoskinson for improperly opening and allowing other employees to open Plaintiff's confidential legal mail relating to another pending civil rights claim, on several occasions between April 2009 and February 2010. Defendant Ryker is charged with condoning these actions by failing to implement procedures to stop Plaintiff's legal mail from being improperly opened. Plaintiff also claims Defendant Hoskinson retaliated against him, by improperly returning a letter from Plaintiff's mother, after he filed grievances over his legal

mail being opened. The Administrative Review Board denied Plaintiff's grievances on March 1 and March 23, 2010.

Finally, Plaintiff's fourth claim relates to Defendant Fenoglio's alleged failure to treat Plaintiff's mouth and shoulder injuries sustained in a fall from his top bunk on November 25, 2008, and the subsequent denial of follow-up treatment by Defendant Wexford Health Sources, Inc. He filed several grievances regarding medical treatment, including other concerns not raised in this petition. The earliest grievance was denied by the Administrative Review Board on January 1, 2009, and the latest was denied on April 19, 2010.

Plaintiff seeks a jury trial, a declaratory judgment that his constitutional rights have been violated by the Defendants' actions, a preliminary and permanent injunction ordering Defendant Wexford Health Sources to provide Plaintiff with specific medical treatment, and unspecified nominal, compensatory and punitive damages against each Defendant, jointly and severally.

**Discussion**

Based on the allegations of the complaint, the Court finds it convenient to divide the pro se action into five (5) counts (reviewing separately the mail retaliation issue raised in Plaintiff's third claim). The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. The designation of these counts does not constitute an opinion as to their merit.

**Count 1 - Deliberate Indifference to Unsanitary Cell Conditions**

The Eighth Amendment prohibiting cruel and unusual punishment is applicable to the states through the Fourteenth Amendment. It has been a means of improving prison conditions that were constitutionally unacceptable. *See, e.g., Robinson v. California*, 370 U.S. 660, 666

(1962); *Sellers v. Henman*, 41 F.3d 1100, 1102 (7th Cir. 1994). As the Supreme Court noted in *Rhodes v. Chapman,* 452 U.S. 337, 346 (1981), the amendment reaches beyond barbarous physical punishment to prohibit the unnecessary and wanton infliction of pain and punishment grossly disproportionate to the severity of the crime. *Id.,* (quoting *Gregg v. Georgia*, 428 U.S. 153, 173 (1976)). The Constitution also prohibits punishment that is totally without penological justification. *Gregg*, 428 U.S. at 183.

Not all prison conditions trigger Eighth Amendment scrutiny – only deprivations of basic human needs like food, medical care, sanitation, and physical safety. *Rhodes,* 452 U.S. at 346; *See also James v. Milwaukee County*, 956 F.2d 696, 699 (7th Cir. 1992). In order to prevail on a conditions of confinement claim, a plaintiff must allege facts that, if true, would satisfy the objective and subjective components applicable to all Eighth Amendment claims. *McNeil v. Lane,* 16 F.3d 123, 124 (7th Cir. 1994); *see also Wilson v. Seiter,* 501 U.S. 294, 302 (1991). The objective component focuses on the nature of the acts or practices alleged to constitute cruel and unusual punishment. *Jackson v. Duckworth,* 955 F.2d 21, 22 (7th Cir. 1992). The objective analysis examines whether the conditions of confinement "exceeded contemporary bounds of decency of a mature, civilized society." *Lunsford v. Bennett,* 17 F.3d 1574, 1579 (7th Cir. 1994). The condition must result in unquestioned and serious deprivations of basic human needs or deprive inmates of the minimal civilized measure of life's necessities. *Rhodes*, 452 U.S. at 347; *accord Jamison-Bey v. Thieret*, 867 F.2d 1046, 1048 (7th Cir. 1989); *Meriwether v. Faulkner*, 821 F.2d 408, 416 (7th Cir 1987).

In addition to showing objectively serious conditions, a plaintiff must also demonstrate the subjective component to an Eighth Amendment claim. The subjective component of

unconstitutional punishment is the intent with which the acts or practices constituting the alleged punishment are inflicted. *Jackson*, 955 F.2d at 22. The subjective component requires that a prison official had a sufficiently culpable state of mind. *See Wilson*, 501 U.S. at 298; *McNeil*, 16 F.3d at 124. In conditions of confinement cases, the relevant state of mind is deliberate indifference to inmate health or safety; the official must be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he also must draw the inference. *See, e.g., Farmer v. Brennan*, 511 U.S. 825, 837; *Wilson*, 501 U.S. at 303; *Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *DelRaine v. Williford*, 32 F.3d 1024, 1032 (7th Cir. 1994). The deliberate indifference standard is satisfied if the plaintiff shows that the prison official acted or failed to act despite the official's knowledge of a substantial risk of serious harm. *Farmer*, 511 U.S. at 842. A failure of prison officials to act in such circumstances suggests that the officials actually want the prisoner to suffer the harm. *Jackson*, 955 F.2d at 22. It is well-settled that mere negligence is not enough. *See, e.g., David v. Cannon*, 474 U.S. 344, 347-48 (1986).

Unsanitary conditions similar to those described by the Plaintiff here have been found to state a claim under the Eighth Amendment. *See Vinning-El v. Long*, 482 F.3d 923, 924 (7th Cir. 2007) (prisoner held in cell for three to six days with no working sink or toilet, floor covered with water, and walls smeared with blood and feces); *Jackson v. Duckworth*, 955 F.2d at 22 (summary judgment improper where inmate alleged he lived with "filth, leaking and inadequate plumbing, roaches, rodents, the constant smell of human waste, . . . [and] unfit water to drink[.]"); *Johnson v. Pelker*, 891 F.2d 136, 139 (7th Cir. 1989) (inmate held for three days in cell with no running water and feces smeared on walls); *see also DeSpain v. Uphoff*, 264 F.3d 965, 974 (10th Cir. 2001) (thirty-six hours with no working toilet, flooded cell and exposure to human

waste as well as the odor of accumulated urine, stated Eighth Amendment claim).

The Plaintiff here claims he had no water to drink, nor to wash his body or flush his toilet for seven days. He was subjected to the constant odor of his urine and feces in his cell for this period, and had to eat his meals in the cell under these conditions. He suffered physical pain and discomfort from the lack of water and lack of access to a working toilet. These unsanitary and hazardous conditions meet the objective component of a constitutional violation.

As to the subjective component, Plaintiff alleges that he made requests to each of the Defendants (Harrington, Brown, Vaughn and Ryker) for water, and they refused to provide it. Further, in response to his requests for repairs, they gave Plaintiff excuses as to why the water in his cell could not be repaired. They did eventually move Plaintiff, after he had spent seven days in the unsanitary cell. Giving liberal construction to the allegations of Plaintiff's pro se complaint, the court may draw the reasonable inference that the Defendants knew of the risks of serious harm created by lack of water and inadequate disposal of human waste, and failed to take measures to mitigate that risk. Thus, the Plaintiff's allegations could amount to a claim for cruel and unusual punishment in violation of his Eighth Amendment rights, and for this reason Count One against Defendants Harrington, Brown, Vaughn and Ryker cannot be dismissed at this time.

**Count 2 - Retaliation for Cell Placement Grievances and Hunger Strike**

Prison officials may not retaliate against inmates for filing grievances or otherwise complaining about their conditions of confinement. *See, e.g., Walker v. Thompson*, 288 F.3d 1005 (7th Cir. 2002); *DeWalt v. Carter*, 224 F.3d 607 (7th Cir. 2000); *Babcock v. White*, 102 F.3d 267 (7th Cir. 1996); *Cain v. Lane*, 857 F.2d 1139 (7th Cir. 1988). Furthermore, "[a]ll that need be specified is the bare minimum facts necessary to put the defendant on notice of the claim so that

he can file an answer." *Higgs v. Carver*, 286 F.3d 437, 439 (7th Cir. 2002). Naming the constitutionally protected action taken by the prisoner and the act of retaliation is all that is necessary to state a claim of improper retaliation. *Id.* To succeed on such a claim, the Plaintiff bears the burden of proving that retaliation for his complaints was a motivating factor in the defendant's decision to take the alleged retaliatory action. *Pearson v. Welborn*, 471 F.3d 732, 740 (7th Cir. 2006).

Plaintiff's initial grievances were filed because he was housed in a cell with a known gang member who had threatened him. These six grievances were addressed to Defendant Walters (a Correctional Officer), and Plaintiff sought emergency review from Defendant Ryker (the Warden). Plaintiff alleges that Defendant Walters retaliated against Plaintiff for filing these grievances by moving him into the cell with inmate Williams, where Plaintiff was subjected to the foul smell of Williams' body odor, urine and feces, which made Plaintiff ill. After Plaintiff declared his hunger strike, he alleges a Lt. Jennings placed him in a cell with bright lights on "constantly" to torture him. (Plaintiff does not name Lt. Jennings as a defendant, thus no determination will be made here as to whether Plaintiff states any claim against him.) After Plaintiff was placed back in the cell with inmate Williams and declared his second hunger strike, Plaintiff then claims that Defendant Cox (a Lieutenant/Correctional Officer) placed Plaintiff in segregation on the basis that Plaintiff had refused housing, an accusation that Plaintiff claims was false. Further, Defendant Cox filed a "false and unjustified" disciplinary report against Plaintiff in retaliation for filing grievances, and to deter Plaintiff from filing further grievances or going on a hunger strike. Defendant Goins (a Lieutenant/Correctional Officer) conducted the hearing on the disciplinary charge filed by Defendant Cox, and imposed the punishment of 30 days in

segregation. This disciplinary action was approved by Defendant Ryker (Warden).

Plaintiff has sufficiently stated a retaliation claim against Defendants Walters and Cox, by describing the protected action taken by Plaintiff (filing grievances and declaring a hunger strike), and the alleged retaliatory acts (placing Plaintiff in a cell with an unsanitary cellmate, placing him in segregation, and filing a false disciplinary ticket). Thus, the allegations of retaliation against Defendant Walters and Defendant Cox cannot be dismissed at this time.

However, Plaintiff has not described any specific retaliatory actions taken by Defendant Goins or Defendant Ryker. Defendant Goins acted as the chair of the hearing committee that heard Plaintiff's grievance filed as a result of the disciplinary charge brought by Defendant Cox, and recommended the discipline to be imposed. (Doc. 1-1, p. 14-15). Plaintiff states merely that Defendant Goins "intentionally approved" the allegedly false disciplinary report, imposed a disciplinary sanction after the grievance hearing, and "threatened" Plaintiff that he would be returned to the cell with inmate Williams. (Doc. 1, p. 8-9) Any action taken after a grievance hearing is "intentional" and this characterization does not suggest the conduct was retaliatory. Plaintiff does not allege that the discipline recommendation by Defendant Goins was made in retaliation or on any other basis than the evidence adduced at the hearing; and the "threat" to return Plaintiff to his former cell assignment is consistent with institutional policy to discourage the use of hunger strikes by inmates. (*See* Doc. 1-1, p.9) The Seventh Circuit has frowned upon inmate coercive tactics like hunger strikes. *See Freeman v. Berge,* 441 F.3d 543, 546 (7th Cir. 2006) ("[a] prison cannot be forced by such tactics to change an otherwise reasonable rule"). Plaintiff's mere conclusory labeling of Defendant Goins' above acts as "retaliation" is not sufficient to state a claim against him. *See Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009); *see*

*also Benson v. Cady,* 761 F.2d 335, 342 (7th Cir.1985) (noting that "alleging merely the ultimate fact of retaliation is insufficient").

Likewise, Plaintiff's statement that Defendant Ryker, as the warden, "intentionally approved the retaliatory discipline" fails to state a claim against this defendant. (Doc. 1, p. 9) The prison warden routinely reviews and approves any final disciplinary action after the conclusion of the grievance hearing. Even if the Plaintiff is able to prove that the disciplinary ticket was filed by Defendant Cox in retaliation, Defendant Ryker's mere supervisory approval of the disciplinary sanction (which is all that is alleged in the complaint) is not enough to establish liability on his part. "The doctrine of respondeat superior does not apply to § 1983 actions; thus to be held individually liable, a defendant must be 'personally responsible for the deprivation of a constitutional right.'" *Sanville v. McCaughtry*, 266 F.3d 724, 740 (7th Cir. 2001) (quoting *Chavez v. Ill. State Police*, 251 F.3d 612, 651 (7th Cir. 2001).

To sum up, the claim of retaliation against Defendants Goins and Ryker must be dismissed without prejudice, but the Plaintiff may proceed with his retaliation count against Defendants Walters and Cox.

**Count 3 - Opening Legal Mail**

Plaintiff accuses Defendant Hoskinson, the mail room supervisor, of intentionally opening incoming mail from Plaintiff's attorney outside Plaintiff's presence and of intentionally holding the opened mail for many days before delivering it to him. Defendant Ryker allegedly violated Plaintiff's rights by not implementing procedures to prevent his legal mail from being opened outside his presence. The opened legal mail contained confidential correspondence regarding an ongoing civil rights case in the Northern Judicial District against Illinois

correctional employees.

Plaintiff identifies three occasions (April 29, July 20, and September 10, 2009) when his mail was "intentionally scrutinized beyond what is required" when Defendant Hoskinson directed other officers to "please verify contents are legal mail and not personal," on a receipt that was given to Plaintiff to sign. (Doc. 1-1, p. 19-20) However, Plaintiff does not state that these envelopes were opened or the mail read by prison staff. On three other dates (September 17 and October 9, 2009, and February 11, 2010), Plaintiff contends that his legal mail was intentionally opened outside his presence, when each of the opened envelopes was clearly marked as "Legal Mail." Plaintiff later received this mail along with a notice that the envelopes were opened in error, but complains that the February 11 letter was held for six days before being delivered to him. (Doc. 1-1, p. 18, 22; Doc. 1-2, p. 3-4)

First, a prison may require legal mail to be specially marked, and any mail not obviously designated as privileged mail may be opened and inspected for contraband. *See Wolff v. McDonnell,* 418 U.S. 539, 576-577 (1974). The verification process complained of by Petitioner is a more generous approach than is constitutionally required. *Id.* Secondly, although the Supreme Court in *Wolff* upheld as constitutional the censoring of "legal mail" by opening it in the inmate's presence, the inadvertent or negligent opening of an occasional legal letter is not actionable. *See, e.g., Bryant v. Winston*, 750 F. Supp. 733, 734 (E.D. Va. 1990). This Court has suggested that a showing of "a systematic pattern or practice of interference" with legal mail may state a constitutional claim. *Bruscino v. Carlson,* 654 F. Supp. 609, 618 (S.D. Ill. 1987). However, the allegations in the instant complaint do not rise to this level. Further, plaintiff has not made any showing that he was harmed in any way by either the opening or the delay in

delivering his mail. Thus, no constitutional violation occurred. The claim against Defendants Hoskinson and Ryker must be dismissed, without prejudice.

**Count 4 - Retaliation for Pursuing Grievances over Opened Mail**

Plaintiff filed grievances over the opening of his mail on September 17 and October 9, 2009, which were denied. Plaintiff claims that on October 22, 2009, Defendant Hoskinson retaliated against him for pursuing the grievances, by improperly returning mail from Plaintiff's mother that Defendant "deceptively" stated was perfumed. Scented letters are prohibited. Plaintiff argues that the letter could not have been perfumed because a mother would not put perfume on a letter to her son. Although the Defendant may have had a legitimate reason to reject the correspondence, at this stage Plaintiff has sufficiently stated a retaliation claim against Defendant Hoskinson, and this count cannot be dismissed.

**Count 5 - Deliberate Indifference to Serious Medical Needs**

The Supreme Court has recognized that "deliberate indifference to serious medical needs of prisoners" may constitute cruel and unusual punishment under the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *Farmer v. Brennan*, 511 U.S. 825 (1994); *see Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam). This encompasses a broader range of conduct than intentional denial of necessary medical treatment, but it stops short of "negligen[ce] in diagnosing or treating a medical condition." *Estelle,* 429 U.S. at 106. *See also Sanville v. McCaughtry,* 266 F.3d 724, 734 (7th Cir. 2001).

> Deliberate indifference involves a two-part test. The plaintiff must show that (1) the medical condition was objectively serious, and (2) the state officials acted with deliberate indifference to his medical needs, which is a subjective standard.

*Sherrod v. Lingle*, 223 F.3d 605, 619 (7th Cir. 2000). However, the Supreme Court stressed that

this test is not an insurmountable hurdle for inmates raising Eighth Amendment claims:

> [A]n Eighth Amendment claimant need not show that a prison official acted or failed to act believing that harm actually would befall an inmate; it is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm.... Whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence, ... and a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious.

*Farmer,* 511 U.S. at 842.

The Seventh Circuit's decisions following this standard for deliberate indifference in the denial or delay of medical care require evidence of a defendant's actual knowledge of, or reckless disregard for, a substantial risk of harm. The Circuit also recognizes that a defendant's inadvertent error, negligence or even ordinary malpractice is insufficient to rise to the level of an Eighth Amendment constitutional violation. *See Duckworth v. Ahmad*, 532 F.3d 675, 679 (7th Cir. 2008).

Plaintiff complains that on November 25, 2008, he fell while climbing down from his bunk, and sustained a large cut inside his mouth. His shoulder had previously been injured, and the fall exacerbated his shoulder pain. He saw Defendant Fenoglio the next day, and claims the Defendant deliberately refused to give him any treatment for his mouth injury, and refused to give him any pain medication for his shoulder. As a result of the mouth injury, he developed a lump inside his mouth that is continually irritated when he chews food. He claims that Defendant Fenoglio's denial of treatment for the cut was due to a policy of Defendant Wexford Health Sources, Inc.

Plaintiff has included copies of numerous grievances filed as a result of his dissatisfaction with medical treatment, dating from December 1, 2008, through April 26, 2010. (Doc. 1-2, p. 7-

24) Although many of these concern the alleged lack of treatment for Plaintiff's shoulder pain, as well as numerous other conditions not raised in the instant action, it is significant that not a single one of Plaintiff's grievances so much as mentions the denial of treatment for the cut in Plaintiff's mouth. By attaching exhibits that show his failure to exhaust his administrative remedies with reference to the claimed denial of treatment for the mouth injury, Plaintiff has effectively "pled himself out of court." *See Jackson v. Marion County*, 66 F.3d 151, 153 (7th Cir.1995) ("A plaintiff can plead himself out of court by alleging facts which show that he has no claim, even though he was not required to allege those facts . . . . Allegations in a complaint are binding admissions . . . and admissions can of course admit the admitter to the exit from the federal courthouse.").

      As to Plaintiff's claim of denial of treatment for his shoulder pain, the attached grievances and responses belie this complaint. Plaintiff did eventually receive pain medication, and had several visits with medical staff where his shoulder injury was assessed. At one point an MRI was suggested, and Plaintiff complained that it was never done. It is clear from Plaintiff's exhibits that he did receive treatment for his shoulder, although he may have been dissatisfied with it. An inmate's desire to receive one form of treatment over another does not amount to deliberate indifference. *See Snipes v. DeTella,* 95 F.3d 586, 592 (7th Cir.1996); *Estelle v. Gamble*, 429 U.S. 97, 107 (1976). Furthermore, a physician's chosen course of treatment for a prisoner may be ineffective, and may even amount to gross negligence or medical malpractice, but malpractice alone does not rise to the level of constitutional deliberate indifference to an inmate's medical needs. *See Estelle,* 429 U.S. at 106; *McGowan v. Hulick*, 612 F.3d 636, 640 (7th Cir. 2010); *Walker v. Peters*, 233 F.3d 494, 499 (7th Cir. 2000).

For the above reasons, Plaintiff's medical deliberate indifference claims against Defendants Fenoglio and Wexford Health Sources must be dismissed with prejudice.

**<u>Severance of Claims</u>**

Rule 18(a) of the Federal Rules of Civil Procedure permits Plaintiff to assert all of his claims against one defendant in one civil action. Plaintiff asserted three of his original four claims against Defendant Ryker, however, this Defendant has been dismissed from all but Count One. The remaining defendants named in Count One (Harrington, Brown and Vaughn) are not named in any other counts.

Of the surviving claims and defendants, Count Two of the complaint seeks relief only against Defendants Walters and Cox. Count Four is against only Defendant Hoskinson. The claims asserted in Counts One, Two and Four do not appear to arise from the same transaction, occurrence, or series of transactions or occurrences. The Seventh Circuit recently confirmed that separate, unrelated claims belong in different suits. *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007). On review of the complaint, the claims against Defendants Walters and Cox in Count Two of the complaint, and the claim against Defendant Hoskinson in Count Four, are not sufficiently related to the claims against Defendants Harrington, Brown, Vaughn and Ryker in Count One so as to allow them to proceed together in one lawsuit.

Plaintiff is **ADVISED** that the Court is inclined to sever Counts Two and Four. If these claims are severed, each claim would be removed from this case and opened in its own new case. A new case number would be assigned for each of these two claims, and an additional filing fee would be assessed for each of the two new cases.

Because the imposition of two additional filing fees may impose a financial burden on

him, Plaintiff is **FURTHER ADVISED** that he may avoid severance (and the imposition of the additional two filing fees) by filing a motion to voluntarily dismiss Counts Two and Four without prejudice. Such a motion must be filed within 45 days of the entry of this order. Before filing that motion, Plaintiff shall consider whether he could re-file the dismissed claims without running afoul of the applicable two-year statute of limitations for civil rights actions in Illinois.

**Pending Motion**

Plaintiff filed a motion for threshold review instanter on November 29, 2010 (Doc. 5). This motion is **DENIED AS MOOT**.

**Disposition**

**IT IS HEREBY ORDERED** that Plaintiff fails to state a retaliation claim against **DEFENDANTS RYKER** and **GOINS** in **COUNT TWO**; therefore **DEFENDANT RYKER** is **DISMISSED** from this count without prejudice, and **DEFENDANT GOINS** is **DISMISSED** from the action without prejudice.

**IT IS FURTHER ORDERED** that **COUNT THREE** and **COUNT FIVE** fail to state a claim upon which relief can be granted, therefore **COUNT THREE** against **DEFENDANTS HOSKINSON** and **RYKER** is **DISMISSED** without prejudice, and **COUNT FIVE** against **DEFENDANTS FENOGLIO** and **WEXFORD HEALTH SOURCES, INC.** is **DISMISSED** with prejudice.

**IT IS FURTHER ORDERED** that within 45 days of the date of entry of this order, (on or before April 11, 2011) Plaintiff may file a motion to voluntarily dismiss Count Two and/or Count Four from this action.

**IT IS FURTHER ORDERED** that if Plaintiff does not voluntarily dismiss Counts Two

and Four from this action, the Court will sever each of these claims into a new action. A new case number will be assigned for each of these two claims, and an additional filing fee will be assessed for each of these two new cases.

Because Plaintiff has not sought or been granted leave to proceed *in forma pauperis* in this action, the Court will not automatically appoint the United States Marshal to effect service of process upon Defendants. Instead, it is Plaintiff's responsibility to serve Defendants Ryker, Harrington, Brown, Vaughn, Walters, Cox and Hoskinson with a summons and copy of the complaint pursuant to Federal Rule of Civil Procedure 4. The Court recognizes that as Plaintiff is incarcerated in a different institution from the location where his claims arose, he may have difficulty effectuating service within the 120 day time limit imposed by Federal Rule of Civil Procedure 4(m). If Plaintiff desires to request the appointment of the United States Marshal to serve process on the Defendants, Plaintiff shall file a motion for service of process at government expense, within 45 days of the date of entry of this order (on or before April 11, 2011). The Clerk of Court is **DIRECTED** to mail to Plaintiff the Court's Pro Se Litigant Guide, containing forms and instructions for filing said motion.

The Clerk of Court is **DIRECTED** to complete, on Plaintiff's behalf, a summons for Defendants Ryker, Harrington, Brown, Vaughn, Walters, Cox and Hoskinson. The Clerk shall forward the summonses and sufficient copies of the complaint and this Memorandum and Order to Plaintiff so that he may serve Defendants.

Plaintiff is **ORDERED** to serve upon Defendants or, if an appearance has been entered by counsel, upon that attorney, a copy of every pleading or other document submitted for consideration by this Court. Plaintiff shall include with the original paper to be filed a certificate

stating the date that a true and correct copy of the document was mailed to each defendant or defendant's counsel.  Any paper received by a district judge or magistrate judge which has not been filed with the Clerk or which fails to include a certificate of service will be disregarded by the Court.

**IT IS FURTHER ORDERED** that, with respect to a Defendant who no longer can be found at the work address provided by Plaintiff, if the United States Marshal is appointed to serve process pursuant to a motion by Plaintiff, the employer shall furnish the United States Marshal with the Defendant's current work address, or, if not known, the Defendant's last-known address.  This information shall be used only for effecting service of process.  Any documentation of the address shall be retained only by the Marshal.  Address information shall not be maintained in the court file or disclosed by the Marshal.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to United States Magistrate Judge Stephen C. Williams for further pre-trial proceedings.

Further, this entire matter is **REFERRED** to United States Magistrate Judge Stephen C. Williams for disposition, as contemplated by Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *should all the parties consent to such a referral.*

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts.  This shall be done in writing and not later than **seven (7) days** after a transfer or other change in address occurs.  Failure to comply with this order will

cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* F‍ED. R. C‍IV. P. 41(b).

**IT IS SO ORDERED.**

**DATED:** 2/22/2011

s/ Michael J. Reagan

**U.S. District Judge**