IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| DAVID C. GEVAS, #B-41175, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 10–cv–493–MJR–SCW |
| | ) |
| DERWIN RYKER, NOBLE HARRINGTON, J. BROWN, C. VAUGHN, L. WALTERS, and T. COX, | ) ) ) |
| | ) |
| Defendants. | |

# REPORT AND RECOMMENDATION

**WILLIAMS, Magistrate Judge:**

## I. Introduction

This matter has been referred to United States Magistrate Judge Stephen C. Williams by United States District Judge Michael J. Reagan pursuant to 28 U.S.C. § 636(b)(1)(B), Federal Rule of Civil Procedure 72(b), and Local Rule 72.1(a) for a Report and Recommendation on the issue of whether Plaintiff exhausted his administrative remedies with the Illinois Department of Corrections. It is **RECOMMENDED** that the Court **FIND** that Plaintiff properly exhausted his claims as to Defendants Harrington, Brown, and Ryker, but did not exhaust his claims as to Vaughn, that the Court **GRANT IN PART AND DENY IN PART** Defendants' Motion for Summary Judgment, and that the Court **ADOPT** the following findings of fact and conclusions of law.

## II. Findings of Fact

This matter stems from a Complaint filed by Plaintiff on July 8, 2010 alleging that Defendants Jeremiah Brown, Noble Harrington, Lee Ryker, and Cecil Vaughn were deliberately indifferent to unsanitary cell conditions. Specifically, Plaintiff's Complaint alleges that he was transferred to Lawrence Correctional Center on July 9, 2008 and upon his arrival was held in a cell that

lacked water for consumption and sanitation and lacked a working toilet (Doc. 9). Plaintiff alleges that he was held in this cell for approximately seven (7) days from July 9, 2008 to July 15, 2008 (*Id.*). As a result of the unsanitary conditions, Plaintiff allegedly suffered dehydration, headaches, constipation, insomnia, and other discomfort including nausea from the foul odor of the un-flushed toilet (*Id.*). Plaintiff alleges that he complained to the Defendants about his conditions but they refused to repair the plumbing in his cell or move him until July 15, 2008 (*Id.*).

In response to Plaintiff's Complaint, Defendants have filed a motion for summary judgment, arguing that Plaintiff has failed to properly exhaust his administrative remedies (Docs. 53 and 54). Specifically, Defendants argue that while Plaintiff did exhaust one grievance as to the unsanitary conditions in his cell, it did not allege that any of the Defendants were involved, nor did it name any Defendant other than Defendant Vaughn. Plaintiff has filed a Response in Opposition to Defendants' Motion for Summary Judgment (Doc. 56) arguing that he has exhausted his administrative remedies because he filed a previous emergency grievance naming all Defendants that was never returned to him. Defendants, in turn, have filed a Reply brief (Doc. 57).

Plaintiff alleges that he exhausted his administrative remedies by filing an emergency grievance to Defendant Ryker, warden at the time of the events alleged in this Complaint, on July 11, 2008, complaining about his placement in a cell without running water in the sink or toilet on July 9, 2008 (Doc. 56 p. 4; Ex. A at ¶ 2). Plaintiff states in his affidavit that his emergency grievance informed Ryker that Plaintiff had informed Correctional Officers' Harrington and Brown as well as Warden Ryker about his lack of water in his cell. His grievance requested that he be moved to another cell with running water or have his cell repaired (*Id.*). He never received the grievance back from Warden Ryker and his request to be moved was ignored by Harrington, Brown, and Warden Ryker (Doc. 56 Ex. A at ¶¶ 2-3). Between July 13, 2008 and August 24, 2008, Plaintiff wrote three letters to Warden Ryker and

his grievance officer requesting the status of his emergency grievance (*Id.*). He never received any response from his letters or his emergency grievance (*Id.* at ¶ 3).

Having not received a response from his emergency grievance, Plaintiff filed a second grievance on August 25, 2008 with his grievance officer, through the normal non-emergency grievance process (*Id.* at ¶ 4). Plaintiff alleges that this grievance provided additional facts regarding his placement in a cell with no running water (*Id.*). Plaintiff's grievance filed on August 25, 2008, states that this is his second grievance and that the "[f]irst grievance [was] not returned from emergency review" (Doc. 56 Ex. B). Plaintiff's grievance stated that he had been held in a cell from July 9, 2008 to July 15, 2008 without running water and though he requested to be placed in a different cell or have the plumbing in his current cell repaired, he was given excuses as to why the water problem could not be fixed and his requests for transfer were ignored (*Id.*). Plaintiff's grievance stated that it was Counselor Vaughn who ultimately intervened and got the cell repaired on July 15, 2008 (*Id.*). Plaintiff's grievance asked that the Correctional Officers assigned to Segregation Building be reprimanded (*Id.*).

The parties do not dispute that Plaintiff's August 25, 2008 grievance was properly exhausted. Plaintiff received a response from his counselor, Defendant Vaughn, on September 2, 2008, stating that the water in his cell had been checked by a plumber. Plaintiff then forwarded his grievance to the Grievance Office, which was received on September 18, 2008 and reviewed by the Grievance Officer on November 18, 2008 (Doc. 56 Ex. B at p. 3). The grievance was denied. The Grievance Officer noted that Maintenance had been contacted and they informed the Grievance Officer that there was no record of the water needing repaired in Segregation Building 21. Further, the Grievance Officer noted that Counselor Vaughn had also found nothing wrong with the water, but had informed a lieutenant about Plaintiff's complaints and Plaintiff was ultimately moved from that cell (*Id.*). The Chief Administrative Officer ultimately concurred with the Grievance Officer's findings on November 24,

2008 (*Id.*).  Plaintiff then timely sent his grievance to the ARB which was received on December 17, 2008.  The ARB recommended denial of the grievance on December 29, 2008 and Director of IDOC's designee Roger E. Walker ultimately concurred with the recommendation on February 4, 2009 (Doc. 56 Ex. B at p. 4).

Defendants do not dispute that Plaintiff timely exhausted his August 28, 2008 grievance. Nor do they dispute that Plaintiff filed an initial emergency grievance with Warden Ryker on July 9, 2008 (Doc. 57 ¶ 1).  Defendants, instead, argue that whether Plaintiff filed an initial emergency grievance that was not responded to is irrelevant because his grievance of August 25, 2008 did not list or identify Defendants Brown, Harrington, and Ryker.  Defendants argue that whether he filed the emergency grievance is not relevant to whether he properly named those Defendants in his August 25, 2008 and asserts that he should have been able to properly name those Defendants because he named them in his July 11, 2008 emergency grievance but failed to do so.

As the undersigned has determined that there are no disputes of fact as to exhaustion, the Court finds that a *Pavey* hearing is not necessary as the issues presented are solely legal questions.

### III.  **Conclusions of Law**

Summary Judgment is proper "if the pleadings, discovery materials, disclosures, and affidavits demonstrate no genuine issue of material fact such that [Defendants are] entitled to judgment as a matter of law." *Wragg v. Village of Thornton*, **604 F.3d 464, 467 (7th Cir. 2010).**  The Court must construe all facts in the light most favorable to Plaintiff, as the non-moving party, and draw all reasonable inferences in his favor.  *Ogden v. Atterholt*, **606 F.3d 355, 358 (7th Cir. 2010)**.

Lawsuits filed by inmates are governed by the provisions of the Prison Litigation Reform Act ("PLRA").  **42 U.S.C. § 1997e(a)**.  That statute states, in pertinent part, that "no action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by

a prisoner confined in any jail, prison, or other correctional facility until such *administrative remedies as are available are exhausted*." *Id*. **(emphasis added).** The Seventh Circuit requires strict adherence to the PLRA's exhaustion requirement. *Dole v. Chandler*, **438 F.3d 804, 809 (7th Cir. 2006) (noting that "[t]his circuit has taken a strict compliance approach to exhaustion")**. Exhaustion must occur before the suit is filed. *Ford v. Johnson*, **362 F.3d 395, 398 (7th Cir. 2004)**. Plaintiff cannot file suit and then exhaust his administrative remedies while the suit is pending. *Id*. Moreover, "[t]o exhaust remedies, a prisoner must file complaints and appeals in the place, and at the time, the prison administrative rules require." *Pozo v. McCaughtry*, **286 F.3d 1022, 1025 (7th Cir. 2005)**. Consequently, if a prisoner fails to properly utilize a prison's grievance process, "the prison administrative authority can refuse to hear the case, and the prisoner's claim can be indefinitely unexhausted." *Dole*, **438 F.3d at 809.**

Under *Pavey*, the Seventh Circuit held that "debatable factual issues relating to the defense of failure to exhaust administrative remedies" are not required to be decided by a jury but are to be determined by the judge. *Pavey*, **544 F.3d at 740-41.** Thus, where failure to exhaust administrative remedies is raised as an affirmative defense, the Court set forth the following recommendations:

> The sequence to be followed in a case in which exhaustion is contested is therefore as follows: (1) The district judge conducts a hearing on exhaustion and permits whatever discovery relating to exhaustion he deems appropriate. (2) If the judge determines that the prisoner did not exhaust his administrative remedies, the judge will then determine whether (a) the plaintiff has failed to exhaust his administrative remedies, and so he must go back and exhaust; (b) or, although he has no unexhausted administrative remedies, the failure to exhaust was innocent (as where prison officials prevent a prisoner from exhausting his remedies), and so he must be given another chance to exhaust (provided that there exist remedies that he will be permitted by the prison authorities to exhaust, so that he's not just being given a runaround); or (c) the failure to exhaust was the prisoner's fault, in which event the case is over. (3)If and when the judge determines that the prisoner has properly exhausted his administrative remedies, the case will proceed to pretrial discovery, and if necessary a trial, on the merits; and if there is a jury trial, the jury will make all necessary findings of fact without being bound

by (or even informed of) any of the findings made by the district judge in determining that the prisoner had exhausted his administrative remedies.

*Id*. **at 742.**

**A.     Exhaustion Requirements Under Illinois Law**

As an inmate confined within the Illinois Department of Corrections, Hall was required to follow the regulations contained in the Illinois Department of Correction's Grievance Procedures for Offenders ("grievance procedures") to properly exhaust his claims. **20 Ill. Administrative Code § 504.800** *et seq*. The grievance procedures first require inmates to speak with the counselor about their complaint. **20 Ill. Admin. Code § 504.810(a)**. Then, if the counselor does not resolve the issue, the inmate must file a grievance form directed to the Grievance Officer within 60 days of the incident. *Id*. The grievance form must:

> contain factual details regarding each aspect of the offender's complaint, including what happened, when, where, and the name of each person who is subject of or who is otherwise involved in the complaint. The provision does not preclude an offender from filing a grievance when the names of individuals are not known, but the offender must include as much descriptive information about the individual as possible.

**20 Ill. Admin. Code §504.810(a)(b).** "The Grievance Officer shall [then] consider the grievance and report his or her findings and recommendations in writing to the Chief Administrative Officer...[who] shall advise the offender of the decision in writing within 2 months after receipt of the written grievance, where reasonably feasible under the circumstances." **20 Ill. Admin. Code §504.830(d).** If the inmate is not satisfied with the Chief Administrative Officer's response, he or she can file an appeal with the Director through the Administrative Review Board ("ARB"). The grievance procedures specifically state, "[i]f after receiving the response of the Chief Administrative Officer, the offender still feels that the problem, complaint or grievance has not been resolved to his or her satisfaction, he or she may appeal in writing to the Director within 30 days after the date of the decision.

Copies of the Grievance Officer's report and the Chief Administrative Officer's decision should be attached." **20 Ill. Admin. Code §504.850(a)**. "The Administrative Review Board shall submit to the Director a written report of its findings and recommendations." **20 Ill. Admin. Code §504.850(e).** "The Director shall review the findings and recommendations of the Board and make a final determination of the grievance within 6 months after receipt of the appealed grievance, where reasonably feasible under the circumstances. The offender shall be sent a copy of the Director's decision." **20 Ill. Admin. Code §504.850(f)**.

The grievance procedures do allow for an inmate to file an emergency grievance. In order to file an emergency grievance, the inmate must forward the grievance directly to the Chief Administrative Officer ("CAO") who may "[determine] that there is a substantial risk of imminent personal injury or other serious or irreparable harm to the offender" and thus the grievance should be handled on an emergency basis. **20 Ill. Admin. Code §504.840(a)**. If an inmate forwards the grievance to the CAO as an emergency grievance, then the CAO "shall expedite processing of the grievance and respond to the offender" indicating to him which course he has decided is necessary after reading the grievance. **20 Ill. Admin. Code §504.840(b)**. Once the CAO has informed the inmate of his decision, the inmate may then appeal that decision to the ARB on an expedited basis. **20 Ill. Admin. Code §504.850(g)**.

**B.     Analysis**

   *1.     Defendants Harrington, Brown, and Ryker*

Defendants argue that they are entitled to summary judgment on Plaintiff's claims because, although he properly exhausted his August 25, 2008 grievance, he failed to properly identify Defendants Harrington, Brown, and Ryker. Plaintiff argues that he did properly exhaust his administrative remedies because he filed an emergency grievance on July 11, 2011, listing Defendants

Harrington, Brown, and Ryker, which was never returned to him. Defendants do not dispute that Plaintiff filed an emergency grievance that was not returned to him. In fact, Defendants' reply indicates that it is undisputed that Plaintiff filed his first grievance on July 11, 2008 for emergency review to Defendant Ryker.[1] Instead, Defendants argue that whether he named the Defendants in the emergency grievance is irrelevant because he failed to properly identify the Defendants in his August 25, 2008.

Defendants, however, are gravely mistaken. The emergency grievance Plaintiff claims he filed on July 11, 2008 is relevant to whether Plaintiff exhausted his administrative remedies. Plaintiff states, and Defendants do not deny, that he filed an emergency grievance to Warden Ryker on July 11, 2008 complaining about the lack of running water in his cell's sink and toilet and naming Defendants Harrington, Brown, and Ryker in the grievance as officers that he spoke with about his cell conditions. Plaintiff, however, claims that he never received a response from Warden Ryker regarding his July 11, 2008 grievance. In fact Plaintiff sent Warden Ryker three letters between July and August about the status of his emergency grievance, and, having received no response, he filed a second grievance through the normal grievance channels. Plaintiff's affidavit is backed up by his second grievance which starts off by informing his counselor that this grievance is in fact his second one on the subject as his first emergency grievance went unanswered.

Once Plaintiff filed his emergency grievance and didn't receive a response, he was not required to further pursue the grievance through the normal channels for exhaustion purposes. The grievance process was, in essence, "unavailable" to him when the warden failed to respond his Plaintiff's grievance. *See Walker v. Sheahan*, **526 F.3d 973, 979 (7th Cir. 2000) (an inmate is not required to appeal his grievance if he submits the grievance to the proper authorities but never receives**

---

[1] Specifically, Defendants indicate in ¶ 1 of their Reply (Doc. 57) that Plaintiff's Material Fact Number One (1) is undisputed, but immaterial.

a response); *Dole v. Chandler*, **438 F.3d 804, 809 (7th Cir. 2006) (a remedy can be unavailable to prisoner if the prison does not respond to the grievance or uses misconduct to prevent a prisoner from exhausting his resources);** *Brown v. Darnold*, **2010 WL 3702373, at \*3 (S.D.Ill 2010) ("The Seventh Circuit has held that administrative remedies become 'unavailable' when prison officials fail to respond to inmate grievances." (quoting** *Lewis v. Washington*, **300 F.3d 829, 833 (7th Cir. 2002)).** Plaintiff had done all that he could do in order the exhaust his grievance. He was not required to further file his grievance elsewhere in order to exhaust. Therefore, the Court finds that Plaintiff had exhausted his administrative remedies when he filed his emergency grievance, listing Defendants Harrington, Brown, and Ryker, that was never returned to him. *Kaba v. Stepp*, **458 F.3d 678. 684 (7th Cir. 2006) (if administrative remedies are not available then prisoner can not be required to exhaust)**.

Even still, Plaintiff did go ahead and file a follow-up grievance through the normal grievance process. His grievance of August 25, 2008 notes that this is his second grievance and that his emergency grievance was never responded to (Doc. 56 Ex. B). As Plaintiff was not required to file this second grievance for exhaustion purposes, whether he named or identified Defendants in the second grievance is immaterial. The Court does note, however, that Plaintiff did identify the people at issue in this second grievance. He stated in the "Relief Requested" section that he wanted the responsible correctional officers assigned to Segregation Building 21 reprimanded. As Plaintiff points out, he did not know the names of additional correctional officers, other than those listed in his original emergency grievance, and thus he provided the second grievance with additional facts and the individuals. He tried to identify those correctional officers and the area they worked in. This, taken in conjunction with the names listed in his emergency grievance, which Defendants do not deny he filed, was enough to properly identify Defendants Harrington, Brown, and Ryker.

Even if Plaintiff hadn't filed that initial emergency grievance, the Court finds that Plaintiff's August 28, 2008 grievance would be considered properly exhausted because the grievance was disposed of on the merits and not returned either at the institutional level or the ARB due to the failure to identify Defendants. Defendants maintain that Plaintiff's August 28, 2008 grievance was not sufficient because it did not specifically name Ryker, Harrington, and Brown or properly describe them in the grievance. However, the Court notes that Plaintiff's grievance went through the entire grievance process, both at the institutional level and the ARB, and his compliance with the grievance process, including whether he properly named individuals, was never questioned. Instead, Plaintiff's grievance was rejected on the merits at every stage without any indication that the grievance was in any way procedurally deficient. The Seventh Circuit has recently indicated that when the institution rules on a grievance on the merits and does not rely on any procedural shortcomings, then Defendants can not use that shortcoming to argue that a plaintiff has failed to exhaust. *Maddox v. Love*, **655 F.3d 709, 721-22 (7th Cir. 2011) ("A procedural shortcoming...amounts to failure to exhaust only if prison administrators explicitly relied on that shortcoming. Where prison officials address an inmate's grievance on the merits without rejecting it on procedural grounds, the grievance has served its function in alerting the state and inviting corrective action, and the defendants cannot rely on the failure to exhaust defense" (citations omitted)).** Here, as in *Maddox*, Plaintiff's grievance served its function of informing prison officials that there was not proper running water in his cell and gave them an opportunity to fix the water issues. While Defendants argue that Plaintiff did not specifically state in his grievance that the water was unfit and that he couldn't flush the toilet, the undersigned finds that his grievance stating that the cell lacked proper running water[2] and that he had

---

[2] Defendants argue that Plaintiff's grievance did not indicate that his water was unsanitary and that his toilet did not work. However, the Court notes that Plaintiff's grievance indicated that he lacked running water in his cell. This seems enough to put the institution on notice that his cell's

been denied a request to either move to a different cell or fix the water issues by correctional officers, was enough to put the institution on notice that Plaintiff was having issues with the water in his cell and that correctional officers were refusing to move Plaintiff. Thus, the undersigned **FINDS** that Plaintiff had exhausted his administrative remedies as to Defendants Harrington, Brown, and Ryker.

 2. *Defendant Vaughn*

As to Defendant Vaughn, Defendants argue that although he is listed in the August 28, 2008 grievance, the grievance does not indicate that Defendant Vaughn did anything wrong. In fact, as Defendants point out, the grievance actually indicates that Defendant Vaughn was the only one to intervene on behalf of Plaintiff and to obtain the necessary repairs for the plumbing in his cell. Plaintiff does not deny that his second grievance does not raise any allegations against Defendant Vaughn. Plaintiff merely states in his Response (Doc. 56) that Defendant Vaughn ignored the fact in his August 28, 2008 grievance that this was Plaintiff's second grievance on the matter and that Vaughn lied and fabricated statements when responding to his second grievance. However, he does not offer a response as to whether he exhausted his claims against Vaughn. He also does not indicate that he listed Vaughn in his initial emergency grievance. Thus, Defendant Vaughn is entitled to summary judgment as there is no evidence that Plaintiff mentioned Vaughn in his initial emergency grievance and his August 28, 2008 grievance, though it mentions Vaughn, does not raise any allegations or complaints against him. Accordingly, the undersigned **RECOMMENDS** that summary judgment be **GRANTED** as to Defendant Vaughn.

## IV. Conclusion

Accordingly, the undersigned **RECOMMENDS** that the Court **FIND** that Plaintiff has exhausted his administrative remedies as to Defendants Harrington, Brown, and Ryker, but

---

plumbing was not working, thus leaving his cell with unsanitary conditions.

has not exhausted his administrative remedies as to Defendant Vaughn. Thus, the undersigned **RECOMMENDS** that the Court **GRANT IN PART AND DENY IN PART** Defendants' motion for summary judgment (Docs. 53 & 54). Should this Report and Recommendation be adopted, Plaintiff's deliberate indifference claims against Defendants Harrington, Brown, and Ryker will remain.

Pursuant to **28 U.S.C. § 636(b)(1)** and **LOCAL RULE 73.1**, the parties shall have fourteen (14) days after service of this Recommendation to file written objections thereto. The failure to file a timely objection may result in the waiver of the right to challenge these Recommendations before either the District Court or the Court of Appeals.

**IT IS SO ORDERED**.

DATED: January 10, 2012

/s/ *Stephen C. Williams*
STEPHEN C. WILLIAMS
United States Magistrate Judge