IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| DAVID GEVAS, #B-41175, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 10-cv-0493-MJR-SCW |
| ) | |
| DERWIN RYKER,  HARRINGTON, ) | |
| J. BROWN, and C. VAUGHN, ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM AND ORDER**

**REAGAN, District Judge:**

On August 15, 2011, Defendants Lee Ryker, Noble Harrington, Jeremiah Brown and Cecil Vaughn moved for summary judgment (Doc. 53), arguing that Plaintiff David Gevas failed to exhaust administrative remedies prior to filing this civil rights action, as is required by 42 U.S.C. § 1997e(a).   Before the Court is the Report of United States Magistrate Judge Stephen C. Williams (Doc. 65) recommending that the motion for summary judgment be granted in part and denied in part.  Also before the Court is Plaintiff Gevas's Objection to the Report and Recommendation (Doc. 69), along with his related motion for leave to file a second, amended affidavit in support of his objection (Doc. 72).

1. Introduction

Plaintiff David Gevas, who is in the custody of the Illinois Department of Corrections, filed suit on July 8, 2010, pursuant to 42 U.S.C. § 1983, for alleged violations of his constitutional rights while he was housed at Lawrence Correctional Center ("Lawrence") in 2008. Plaintiff Gevas alleges that when he was transferred into Lawrence on July 9, 2008, he was held

1

for seven days in a cell that lacked water for consumption and sanitation, and lacked a working toilet. He made requests to Defendants Lee Ryker, Noble Harrington, Jeremiah Brown and Cecil Vaughn for water, plumbing repairs, and to be moved to a cell with functioning water, but was not moved until July 15, 2008.  As a result, Plaintiff alleges that he suffered dehydration, headaches, constipation, insomnia, and other discomfort including nausea from the foul odor of the un-flushed toilet.  The Court has construed the complaint as asserting a claim of deliberate indifference to unsanitary conditions of confinement, under the "cruel and unusual punishment" clause of the Eighth Amendment (*see* Doc. 9).

The Report of United States Magistrate Judge Stephen C. Williams (Doc. 65) recommends that the motion for summary judgment filed by Defendants Ryker, Harrington, Brown and Vaughn (Doc. 53) be granted in part and denied in part.  More specifically, Judge Williams recommends that *only* Defendant Vaughn be granted summary judgment, due to Plaintiff Gevas's failure to exhaust administrative remedies prior to filing suit.  Judge Williams acknowledges that Vaugh is mentioned by name in a grievance dated August 28, 2008, that proceeded through the full administrative process.  However, Judge Williams construes the August 28, 2008, grievance as complimentary to Vaughn and not actually asserting a grievance against him. With respect to Defendants Ryker, Harrington and Brown, Judge Williams finds that administrative remedies were exhausted, despite Defendants' assertions to the contrary.

Defendants have not objected to Judge Williams's Report and Recommendation. Plaintiff Gevas has filed an objection pertaining *only* to Defendant Vaughn (Doc. 69).

2. Applicable Legal Standards

Plaintiff Gevas has objected to the Report and Recommendation; accordingly, the Court will undertake de novo review of the portions of the Report to which specific objection was made. 28 U.S.C. § 636(b)(1)(B); Fed.R.Civ.P. 72(b); Southern District of Illinois Local Rule 73.1(b); *Govas v. Chalmers*, 965 F.2d 298, 301 (7th Cir. 1992). The Court may accept, reject or modify the recommended decision, or recommit the matter to the Magistrate Judge with instructions. Fed.R.Civ.P. 72(b); Local Rule 73.1(b); *Willis v. Caterpillar, Inc*., 199 F.3d 902, 904 (7th Cir. 1999).

Defendants have moved for summary judgment, asserting that Plaintiff Gevas failed to exhaust administrative remedies before filing suit, as required by 42 U.S.C. § 1997e(a). *See* Doc. 54. As a procedural matter, Defendants cite Federal Rule of Civil Procedure 56. However, analysis of the exhaustion requirement is governed by unique procedures, different from those generally applicable to motions under Rule 56.

The Prison Litigation Reform Act of 1995 (PLRA) requires prisoners to exhaust administrative remedies before filing suit in federal court. That requirement applies to all suits challenging prison conditions under 42 U.S.C. § 1983, as well as actions under "any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility." 42 U.S.C. § 1997e(a). Exhaustion of administrative remedies under the PLRA is a condition precedent to suit in federal court. *Dixon v. Page*, 291 F.3d 485, 490 (7th Cir. 2002). The law of this Circuit establishes that the inmate must comply with the rules and procedures governing grievances in the particular institution of incarceration, including any time limitations and *all steps* in a multi-step grievance process.

To properly exhaust remedies within the meaning of the PLRA, the inmate "must file complaints and appeals in the place, and at the time, the prison's administrative rules require." *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002). *See also Burrell v. Powers*, 431 F.3d 282, 284 (7th Cir. 2005). If administrative remedies are *not* properly exhausted prior to commencement of the federal lawsuit, the district court must dismiss the suit (or any claims not fully exhausted). *Burrell*, 431 F.3d at 285; *Jones v. Bock*, 549 U.S. 199, 201 (2007). The IDOC's three-stage administrative process for resolving inmate grievances is delineated in 20 Ill. Admin. Code Section 504.810. The inmate is required to follow the sequential process, concluding with an appeal in writing to the Director of the IDOC, by way of the Administrative Review Board (ARB). *See* 20 Ill. Admin. Code §§ 504.810, 504.830, 504.850.

Failure to exhaust administrative remedies is an affirmative defense; the defendant correctional officials have the burden of proving that the inmate had available remedies that he did not utilize. *See, e.g., Dole v. Chandler,* 438 F.3d 804, 809 (7th Cir. 2006); *Dale v. Lappin,* 376 F.3d 652, 655 (7th Cir. 2004). A remedy is "available" if the administrative procedure can lead to some relief, even if it is not the precise relief the inmate wants. *See Booth v. Churner,* 532 U.S. 731, 741 n. 6 (2001); *Larkin v. Galloway,* 266 F.3d 718, 723 (7th Cir. 2001). "Prison officials may not take unfair advantage of the exhaustion requirement . . . and a remedy becomes 'unavailable' if prison employees do not respond to a properly filed grievance or otherwise use *affirmative misconduct* to prevent a prisoner from exhausting." *Dole v. Chandler,* 438 F.3d 804, 809 (7th Cir. 2006) (emphasis added) (citing *Lewis v. Washington,* 300 F.3d 829, 833 (7th Cir. 2002); and *Dale v. Lappin,* 376 F.3d 652, 656 (7th Cir. 2004).

4

In *Pavey v. Conley,* 544 F.3d 739 (7th Cir. 2008), the Seventh Circuit delineated a three-step process for cases in which exhaustion is contested.

> (1) The district judge conducts a hearing on exhaustion and permits whatever discovery relating to exhaustion he deems appropriate. (2) If the judge determines that the prisoner did not exhaust his administrative remedies, the judge will then determine whether (a) the plaintiff has failed to exhaust his administrative remedies, and so he must go back and exhaust; (b) or, although he has no unexhausted administrative remedies, the failure to exhaust was innocent (as where prison officials prevent a prisoner from exhausting his remedies), and so he must be given another chance to exhaust (provided that there exist remedies that he will be permitted by the prison authorities to exhaust, so that he's not just being given a runaround); or (c) the failure to exhaust was the prisoner's fault, in which event the case is over. (3) If and when the judge determines that the prisoner has properly exhausted his administrative remedies, the case will proceed to pretrial discovery, and if necessary a trial, on the merits; and if there is a jury trial, the jury will make all necessary findings of fact without being bound by (or even informed of) any of the findings made by the district judge in determining that the prisoner had exhausted his administrative remedies.

*Id.* at 742. [1]

Typically, when deciding a motion to dismiss or for summary judgment, all facts are construed in the light most favorable to, and all legitimate inferences are drawn in favor of, the non-moving party. *See Regent v. City of LaCrosse*, 595 F.3d 691, 695 (7th Cir. 2010). However, when ruling on the exhaustion issue, the Court may make credibility determinations and findings of fact. *See Pavey v. Conley*, 663 F.3d 899, 904-905 (7th Cir. 2011) (citing *Anderson v. City of Bessemer City, N.C.,* 470 U.S. 564, 575 (1985) ("[W]hen a trial judge's finding is based on his decision to credit the testimony of one of two or more witnesses, each of whom has told a coherent

---

[1] In accordance with 28 U.S.C. § 636(b)(1)(B), Magistrate Judge Williams was designated to issue a Report and Recommendation. Judge Williams observed that the motion could be decided as a matter of law, and no *Pavey* hearing was necessary.

and facially plausible story that is not contradicted by extrinsic evidence, that finding, if not internally inconsistent, can virtually never be clear error.'")).

In the event that available administrative remedies are not properly exhausted, dismissal is without prejudice to initiating another action, if appropriate, after all remedies have been exhausted. *Burrell*, 431 F.3d at 285, *citing Walker v. Thompson*, 288 F.3d 1005, 1009 (7th Cir. 2002) ("Dismissal for failure to exhaust is without prejudice ...."), and *Ford v. Johnson*, 362 F.3d 395, 401 (7th Cir. 2004) ("all dismissals under § 1997e(a) should be without prejudice"). *Accord Barnes v. Briley*, 420 F.3d 673, 676 (7th Cir. 2005).

3.   Analysis

Plaintiff Gevas's objection (Doc. 69) pertains just to Defendant Vaughn, the only one of the three Defendants Judge Williams recommends be granted summary judgment. Therefore, pursuant to 28 U.S.C. § 636(b), this Court need not conduct de novo review of the other aspects of the Report and Recommendation.   *Thomas v. Arn*, 474 U.S. 140, 149-52 (1985); *Video Views Inc., v. Studio 21, Ltd.,* 797 F.2d 538 (7th Cir. 1986).   Because Plaintiff's objection is very narrow, the recitation of facts set forth in the Report is repeated here in order to place the issues in context.

> Plaintiff alleges that he exhausted his administrative remedies by filing an emergency grievance to Defendant Ryker, warden at the time of the events alleged in this Complaint, on July 11, 2008, complaining about his placement in a cell without running water in the sink or toilet on July 9, 2008 (Doc. 56 p. 4; Ex. A at ¶ 2). Plaintiff states in his affidavit that his emergency grievance informed Ryker that Plaintiff had informed Correctional Officers' Harrington and Brown as well as Warden Ryker about his lack of water in his cell. His grievance requested that he be moved to another cell with running water or have his cell repaired (*Id*.). He never received the grievance back from Warden Ryker and his request to be moved was ignored by Harrington, Brown, and Warden Ryker (Doc. 56 Ex. A at ¶¶ 2-3). Between July 13, 2008 and August 24,

2008, Plaintiff wrote three letters to Warden Ryker and his grievance officer requesting the status of his emergency grievance (*Id.*). He never received any response from his letters or his emergency grievance (*Id.* at ¶ 3).

Having not received a response from his emergency grievance, Plaintiff filed a second grievance on August 25, 2008 with his grievance officer, through the normal non-emergency grievance process (*Id.* at ¶ 4). Plaintiff alleges that this grievance provided additional facts regarding his placement in a cell with no running water (*Id.*). Plaintiff's grievance filed on August 25, 2008, states that this is his second grievance and that the "[f]irst grievance [was] not returned from emergency review" (Doc. 56 Ex. B). Plaintiff's grievance stated that he had been held in a cell from July 9, 2008 to July 15, 2008 without running water and though he requested to be placed in a different cell or have the plumbing in his current cell repaired, he was given excuses as to why the water problem could not be fixed and his requests for transfer were ignored (*Id.*). Plaintiff's grievance stated that it was Counselor Vaughn who ultimately intervened and got the cell repaired on July 15, 2008 (*Id.*). Plaintiff's grievance asked that the Correctional Officers assigned to Segregation Building be reprimanded (*Id.*).

The parties do not dispute that Plaintiff's August 25, 2008 grievance was properly exhausted. Plaintiff received a response from his counselor, Defendant Vaughn, on September 2, 2008, stating that the water in his cell had been checked by a plumber. Plaintiff then forwarded his grievance to the Grievance Office, which was received on September 18, 2008 and reviewed by the Grievance Officer on November 18, 2008 (Doc. 56 Ex. B at p. 3). The grievance was denied. The Grievance Officer noted that Maintenance had been contacted and they informed the Grievance Officer that there was no record of the water needing repaired in Segregation Building 21. Further, the Grievance Officer noted that Counselor Vaughn had also found nothing wrong with the water, but had informed a lieutenant about Plaintiff's complaints and Plaintiff was ultimately moved from that cell (*Id.*). The Chief Administrative Officer ultimately concurred with the Grievance Officer's findings on November 24, 2008 (*Id.*). Plaintiff then timely sent his grievance to the ARB which was received on December 17, 2008. The ARB recommended denial of the grievance on December 29, 2008 and Director of IDOC's designee Roger E. Walker ultimately concurred with the recommendation on February 4, 2009 (Doc. 56 Ex. B at p. 4).

Defendants do not dispute that Plaintiff timely exhausted his August 28, 2008 grievance. Nor do they dispute that Plaintiff filed an initial emergency grievance with Warden Ryker on July 9, 2008 (Doc. 57 ¶ 1). Defendants, instead, argue that whether Plaintiff filed an initial emergency grievance that was not responded to is irrelevant because his grievance of August 25, 2008 did not list or identify Defendants Brown, Harrington, and Ryker. Defendants argue that whether he filed the emergency grievance is not relevant to whether he properly named those Defendants in his August 25, 2008 and asserts that he

7

> should have been able to properly name those Defendants because he named them in his July 11, 2008 emergency grievance but failed to do so.

Doc. 65, pp. 2-4.

Gevas objects that Vaugh's statement to the grievance officer investigating the August 28, 2008, grievance, "is wrong and very malicious toward the Plaintiff, and is one of many reasons the Plaintiff appealed and exhausted his August 25, 2008, grievance." Doc. 69, p. 2; *see also* Doc. 69, p. 8 (Grievance Officer's Report dated 9/18/08). Plaintiff asserts that, had Vaughn been truthful when being interviewed by the grievance officer, Plaintiff would have been moved out of the cell earlier.

Gevas further objects that he could not have filed another grievance against Vaughn, taking issue with the Vaugh's statement to the investigating officer, because such a grievance—more than 60 days after the incident-- would have been time barred.

Lastly, Gevas takes issue with Judge Williams's statement that Gevas "does not indicate [in his response to Defendants' motion] that he listed Vaughn in his his initial emergency grievance," thereby foreclosing an alternate route to exhaustion. *See* Doc. 65, p. 11. According to Gevas, "[i]t is a mere oversight on the part of Plaintiff that he did not indicate that he listed Vaughn in his initial emergency grievance." Doc. 69, p. 4. Gevas supports his position with his own affidavit (Doc. 73). Gevas also moves for leave to file a second affidavit (Doc. 72).

Insofar as Plaintiff seeks leave to file a second affidavit, in accordance with Federal Rule of Civil Procedure 72(b) and *Willis v. Caterpillar, Inc.,* 199 F.3d 902, 904 (7th Cir. 1999), when a party objects to a Report and Recommendation, the district judge may receive additional evidence when making the de novo review. Accordingly, and out of an overabundance of caution, as well as in consideration of Gevas's purported confusion caused by medication, his

8

motion (Doc. 72) is **GRANTED**.   Both of Gevas's affidavits will be considered.

Gevas's argument that the admittedly exhausted August 25, 2008, grievance should be construed to include Vaughn is not well taken.  The August 28, 2008, grievance states in pertinent part:  "Counselor Vaughn had to intervene two times to get the water repaired July 15, 2008."  Doc. 69, pp. 6-7 (August 25, 2008, Grievance). The only statement in the grievance relative to Vaughn cannot be reasonably read to indicate that Plaintiff had a grievance against Vaughn.   In accordance with 20 Ill. Admin. Code § 504.810:

> The grievance shall contain factual details regarding each aspect of the offender's complaint, including what happened, when, where, and the name of each person who is subject of or who is otherwise involved in the complaint. The provision does not preclude an offender from filing a grievance when the names of individuals are not known, but the offender must include as much descriptive information about the individual as possible.

20 Ill. Admin. Code §504.810(b).   Plaintiff's statement about Vaughn does not conform with the letter or spirit of Section 504.810, and does not even intimate that Vaughn is perceived as a problem.  Rather, as Plaintiff now makes clear, his only issue with Vaughn is that he believes Vaughn *subsequently* told the grievance officer the water was okay, when he had previously recognized that there was a problem and had intervened twice to try to get the issue resolved. Therefore, the August 25, 2008, grievance is insufficient for purpose of exhausting administrative remedies relative to Defendant Vaughn.

Plaintiff did not take issue with Vaughn until approximately September 18, 2008, when Vaughn made the allegedly false statement to the grievance officer.   Therefore, neither his first, "emergency" grievance, nor his subsequent August 25, 2008, grievance can possibly serve to exhaust administrative remedies relative to Vaughn. Plaintiffs two recent affidavits do not alter

this conclusion, as they only indicate that Vaughn was alerted to the water issue and he presented the issue to two different lieutenants, to no avail.

Section 504.810 prescribes that, "[a] grievance shall be filed within 60 days after the discovery of the incident, occurrence, or problem that gives rise to the grievance. However, if an offender can demonstrate that a grievance was not timely filed for good cause, the grievance shall be considered." 20 IL ADC 504.810(a). Thus, Plaintiff was not procedurally precluded from filing a separate grievance regarding Vaughn. When Plaintiff appealed the grievance officer's report and the denial of the grievance to the Administrative Review Board, he was aware of Vaugh's alleged misstatement, but he did not raise that issue in his appeal. *See* Doc. 54-1, p. 5 (Plaintiff's Appeal to ARB dated 12/12/08).

Plaintiff cites a district court order in *Watkins v. Ghosh*, 2011 WL 5981006 *5 (N.D.Ill. 2011), for the proposition that an inmate need not initiate a new, separate grievance to take issue with how an initial grievance is handled. With all due respect to U.S. District Judge Charels P. Kocoras, the order is not a controlling precedent. However, the Court of Appeals for the Seventh Circuit has, in dicta, indicated that it disfavors the notion of an inmate "being caught in some never-ending cycle of grievances." *See Dixon v. Page*, 291 F.3d 485, 490 (7th Cir. 2002). Nevertheless, in this particular situation, if Plaintiff were allowed to circumvent the grievance process relative to his complaint about Vaughn lying, the purpose of the exhaustion requirement would be thwarted, and the specificity requirements of 20 IL ADC 504.810 would be meaningless.

In *Maddox v. Love*, 655 F.3d 709, 722 (7th Cir. 2011), the Court of Appeals for the Seventh Circuit recently reiterated that the primary purpose of the exhaustion requirement is not to give early notice to those who may later be sued; rather, the primary purpose is to alert prison

officials to a problem. *See also Jones v. Bock*, 549 U.S. 199 (2007). By his own admission, Plaintiff's problem with Vaughn relates to Vaughn allegedly lying, not with how Vaughn handled Plaintiff's complaints about the conditions of his cell. Thus, prison officials have never been alerted to Vaughn's now alleged deliberate indifference to the conditions of Plaintiff's cell, or to his alleged lying. Therefore, this Court does not perceive the sort of never-ending cycle that would warrant circumventing the exhaustion requirements and sweeping up Defendant Vaughn with the other three Defendants.

4.  Conclusion

Plaintiff Gevas's motion for leave to file a second affidavit (Doc. 72) is **GRANTED**. The Court will consider the affidavit attached to Doc. 72 as properly filed.

The Court **ADOPTS** Magistrate Judge Williams's Report and Recommendation (Doc. 65) except with respect those portions that Plaintiff specifically objected to relative to Defendant Vaughn. For the reasons stated, the Court **GRANTS IN PART AND DENIED IN PART** Defendants' motion for summary judgment (Doc. 53): Defendant Vaughn is **GRANTED** summary judgment (Doc. 53) and is **DISMISSED, without prejudice**; Defendants Ryker, Harrington and Brown are **DENIED** summary judgment. The Court will not formally enter final judgment against Plaintiff Gevas and in favor of Defendant Vaughn until all claims against all Defendants are resolved. The claims against Defendants Ryker, Harrington and Brown shall proceed.

**IT IS SO ORDERED.**

DATED: February 29, 2012     s/ *Michael J. Reagan*
                                                **United States District Judge**
                                                **Southern District of Illinois**